UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JONATHAN CROWELL, BENJAMIN
LAPIN and REUVEN LAPIN, Individually
and on Behalf of All Others Similarly
Situated

                    Plaintiffs,

  v.

DAVID H. MCCORMICK, ROBERT M.
CALDERONI and ARIBA, INC.,

                     Defendants.
_____/

No. C 06-05575 MHP

**MEMORANDUM & ORDER**
**Re: Motion to Dismiss**

Plaintiffs Jonathan Crowell, Benjamin Lapin, and Reuven Lapin--in their individual capacities and on behalf of all others similarly situated--bring this action against defendant Ariba, Inc. ("Ariba") and two of its officers, David McCormick ("McCormick") and Robert M. Calderoni ("Calderoni"), for violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and for violations of Rule 10-b, 17 C.F.R. § 240.10b-5. Plaintiffs allege that Ariba made materially false and misleading statements and omissions concerning its software products while fully aware that these products infringed the patent rights of a competitor. Now before the court is defendants' motion to dismiss plaintiffs' Second Amended Complaint ("SAC"). Having considered the parties' arguments and submissions, and for the reasons set forth

1

below, the court enters the following memorandum and order.

BACKGROUND

The present action arises from a prior patent infringement suit brought against defendant Ariba by a competitor named ePlus. Ariba provides clients with "spend management software" that allows companies to manage the purchasing of non-payroll goods and services required to run their businesses. SAC ¶ 2. In May 2004, ePlus sued Ariba for patent infringement, alleging that three of Ariba's software products--Ariba Buyer, Ariba Marketplace and Ariba Category Procurement--infringed three of ePlus' patents. Id. at ¶ 28. The case was tried to a jury. Id. at ¶ 42. On February 7, 2005 the jury returned a verdict in favor of ePlus, finding that Ariba had wilfully infringed ePlus' patents. Id. On Februrary 8, 2005, Ariba publicly announced the jury verdict. On that day, Ariba's common stock fell 17.5%. Id. at ¶ 42.

The gravamen of plaintiffs' Second Amended Complaint ("SAC") is that during the class period from June 10, 2003 through February 7, 2005, defendants knew or should have known that its software products infringed ePlus' patents. Defendants therefore misled investors when they knowingly, or at least with deliberate recklessness, issued press releases and filed SEC forms containing positive statements about its products and revenue while failing to state that it did not have full rights to sell the software, could not maintain its revenue based on those sales, and was wilfully infringing ePlus' patents. Plaintiffs allege that defendants had motive and opportunity to artificially inflate Ariba's stock price to benefit insiders who sold stock during the class period and to effect a merger with FreeMarkets on more favorable terms.

Plaintiffs are individuals who purchased Ariba stock during the class period. They allege harm resulting from the purchase of Ariba stock that would not have been artificially inflated but for defendants' fraud in concealing the patent infringement. Defendants are Ariba and two of its officers, David McCormick who was President and Board Member and Robert Calderoni who was Chairman and CEO. SAC ¶ 14, 15. Defendants move to dismiss the Second Amended Complaint

("SAC") on the basis that it fails to plead both fraud and scienter with particularity.

LEGAL STANDARD

The Private Securities Litigation Reform Act of 1995 ("PSLRA") significantly altered pleading requirements in private securities litigation in order to "deter opportunistic private plaintiffs from filing abusive securities fraud claims." In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 973 (9th Cir. 1999). The statute requires a securities fraud complaint to plead both fraud and scienter with particularity. 15 U.S.C. § 78u-4(b)(1)-(2). Plaintiffs must identify (1) each statement alleged to have been misleading, (2) the reason or reasons why the statement is misleading, and (3) if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u-4(b)(1); In re The Vantive Corp. Sec. Litig., 283 F.3d 1079, 1085 (9th Cir. 2002). Allegations are deemed to be held on information and belief, and thus subject to the particularity requirement, unless plaintiffs have personal knowledge of the facts. In re The Vantive, 283 F.3d at 1085, n.3.

A complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Ninth Circuit has defined the requisite state of mind as "deliberate recklessness, at minimum," and requires plaintiffs to plead, "in great detail, facts that constitute strong circumstantial evidence" of that mental state. Silicon Graphics, 183 F.3d at 974. Facts showing "mere recklessness" or a "motive and opportunity" to commit fraud may provide "some reasonable inference of intent, [but] they are not sufficient to establish a *strong* inference of deliberate recklessness." Id. When considering whether plaintiffs have shown a strong inference of scienter, a court "must take into account plausible opposing inferences," including inferences unfavorable to the plaintiff. Tellabs v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007). "A complaint will survive...only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any

opposing inference one could draw from the facts alleged." Id. at 2510. Finally, a court must consider the complaint in its entirety since the inquiry is whether all the facts alleged, taken collectively, give rise to a strong inference of scienter. Id. at 2509.

As with an ordinary motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court ruling on a motion to dismiss a claim governed by the PSLRA's heightened pleading requirements must accept all factual allegations in the complaint as true. Id. Review is generally limited to the contents of the complaint, but a court may consider other sources as well. Under the incorporation by reference doctrine, a court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached" to the complaint. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994); Tellabs, 127 S.Ct. at 2509. In addition, whether requested or not, the court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. Fed. R. Evid. 201; Tellabs, 127 S.Ct. at 2509.

## DISCUSSION

I. Section 10(b) and Rule 10b-5 Claims

In order to state a claim under section 10(b) and Rule 10b-5, the plaintiff must allege 1) a misrepresentation or omission, 2) of material fact, 3) made with scienter, 4) on which the plaintiff justifiably relied, 5) that proximately cause the alleged loss. Binder v. Gillespie, 184 F.3d 1059 (9th Cir. 1999), *cert denied*, 120 S.Ct. 1158 (2000). A presumption of reliance is available to plaintiffs alleging violations of section 10(b) based on primarily omissions of material fact, and is also available to plaintiffs alleging that a defendant made material representations or omissions concerning a security that is actively traded in an "efficient market." Id. As already mentioned above, both fraud and scienter must be pled with particularity.

Plaintiffs have satisfied their burden to identify specific statements and to explain why the statements are false and misleading. They have itemized over 40 separate press releases and SEC

forms issued during the class period containing allegedly misleading statements concerning: 1) Ariba's spend management software; 2) the patent litigation between Ariba and ePlus; or 3) financial results based on revenue derived from the spend management software. Plaintiffs allege two primary theories of fraud. First, Ariba misled investors by creating the impression that Ariba had full rights to market and sell the software when it knew that it did not, and second, Ariba failed to properly disclose and account for contingent losses under Generally Accepted Accounting Principles ("GAAP"). The alleged motivation for these fraudulent statements was to artificially inflate Ariba's stock price to benefit corporate insiders who sold Ariba stock and to acquire FreeMarkets at a discounted price.

The court will address the three categories of statements in turn, analyzing whether the alleged statements are actionable under the federal securities laws. If they are actionable, the court will then address whether plaintiffs have pled particular facts supporting 1) their information and belief that the statements are indeed false and/or misleading and 2) a strong inference that the statements were made with knowledge or deliberate recklessness as to their truth.

### A.  Statements Concerning Ariba's Software

Plaintiffs have cited numerous press releases containing statements regarding Ariba's spend management software and in particular, the three software products that were found to infringe ePlus' patents. Some of these statements were made by Ariba itself and others were made by three of its officers--McCormick and Calderoni who are individual defendants in this action and Schmitt who is not named as a defendant. See, e.g. SAC ¶¶ 85, 94. These statements all relate to some aspect of Ariba's software, for example, 1) the characteristics and functions of the software generally; 2) the particular benefits it had conferred on existing clients and new clients; 3) the addition of new products to its portfolio of spend management software; and 4) workshops and conferences to teach, present and review the software's capabilities. To avoid unnecessary repetition, the court will give only a sampling of the litany of statements identified in the

complaint. For example, the complaint alleges:

- On December 2, 2003, Ariba issued a press release announcing that its spend management software has "helped DuPont [ ], one of the world's leading science companies, transform its purchasing process, and save up to 13% on many categories of spend." SAC ¶ 69.

- On February 4, 2004, Ariba issued a press release announcing the gain of a new customer for Ariba's spend management software and stating, "[b]ased on results of a comprehensive analysis of Ariba and competing solutions, Owens Corning selected Ariba because of the company's deep understating [sic] of enterprise sourcing operations..." SAC ¶ 79.

- On May 3, 2004, Ariba issued a press release announcing the commencement of its annual conference concerning spend management software. Conference attendees would be able to "interact with leading companies to learn how Enterprise Spend Management is moving to the front lines of business and becoming a hallmark of today's most productive, cost-efficient organizations." SAC ¶ 89.

- On April 27, 2004, Ariba issued a press release announcing a new addition to its spend management software portfolio and describing the new product as "enabl[ing] companies to manage the requisition-to-pay lifecycle for complex spend categories," thereby "enhanc[ing] contract compliance, allow[ing] for greater speed visibility, and accelerat[ing] cycle times." SAC ¶ 83.

For these and other similar statements (e.g. SAC ¶¶ 45, 47, 49, 51, 53, 55, 59, 61, 65), plaintiffs invoke the same boilerplate language to explain why the statements are false and misleading. Plaintiffs allege that Ariba created the false impression that it had full rights to market the software, when in fact it knew its products infringed ePlus' patents.

Although "a statement that is literally true can be misleading and thus actionable under the securities laws," there is no legal support for the proposition that "once a disclosure is made, there is a duty to make it complete and accurate." Brody v. Transitional Hospitals Corporations, 280 F.3d 997, 1006 (9th Cir. 2001). Not all omissions are actionable. Id. Only an omission that "affirmatively creates an impression of a state of affairs that differs in a material way from the one that actually exists" is actionable. Id. In this case, what was disclosed were the functionalities of Ariba's spend management software and the logistical and economic benefits clients could derive from utilizing it. Granted, to make these statements entirely complete, defendants could have

6

appended additional statements touching on a variety of aspects including the intellectual property foundations of the software. But as the Ninth Circuit has made clear, there is no "freestanding completeness requirement" such that defendants must provide comprehensive and universal coverage about everything it knows regarding a particular subject matter. Id. The press releases described above are not misleading because they do not affirmatively speak to the issue of the patent rights of ePlus, nor do they imply anything about the intellectual property foundations on which the software is based. They simply do not say anything about whether Ariba's products did or did not infringe ePlus' patents.

Moreover, some portions of the press releases are statements of mere corporate puffery. Such "'vague, generalized, and unspecific assertions' of corporate optimism are not actionable under the federal securities laws." In re Cornerstone Propane Partners, 355 F. Supp. 2d. 1069, 1087 (N.D. Cal. 2005). For example, in the May 3, 2004 press release quoted above, Ariba stated that its spend management software was "moving to the front lines of business" and was "becoming a hallmark of today's most productive, cost-efficient organizations." Statements such as these are generalized statements of optimism "not measurable and not tethered to facts that a reasonable person would deem important to a securities investment decision." Id. The court concludes that generalized statements concerning Ariba's spend management software, including statements about the three products found to be infringing, are not actionable as materially false or misleading.

B. <u>Statements Concerning Patent Infringement</u>

After ePlus filed its patent litigation suit against Ariba in May 2004, Ariba disclosed the patent litigation for the first time in its quarterly Form 10-Q filed with the SEC in August 2004. SAC ¶ 98. Under the incorporation by reference doctrine, the court has examined the Form 10-Q and it is apparent that it covered the quarter ending June 30, 2004, the quarter in which the litigation was filed. The court also takes judicial notice of the complaint filed in the patent

7

litigation. The court concludes that the August 2004 SEC disclosure contains a factually true description of the ePlus complaint, including where the litigation was filed, the causes of action alleged and the prayer for relief. Other than the statement that "[Ariba] is unable to assess the outcome of the litigation," none of the statements in the August 2004 disclosure are actionable as misleading.

Ariba disclosed the patent litigation again in its annual Form 10-K filed with the SEC in December 2004. SAC ¶ 110. This disclosure identified the three products that were alleged to be infringing and stated that discovery was complete, both parties' motions for summary judgment had been denied, and trial was scheduled for January 2005. These are all truthful statements of fact regarding the procedural history of the case and are therefore not actionable. Reiterating the August 2004 statement that Ariba was unable to assess the outcome of the litigation, the December 2004 disclosure further stated that:

> We cannot predict the outcome of this litigation. If we were to lose, we could be liable for damages for past infringement. Plaintiff claims royalty damages of approximately $76 million to $98 million. We dispute that we are liable for any damages and dispute plaintiff's calculation as to the amount of damages. If we were to lose, we could be enjoined from selling the products at issue in the litigation and enjoined from inducing customers to infringe. However, we believe we have strong defenses to ePlus's claims and intend to vigorously defend against them.

The alleged reason for why these patent litigation disclosures are misleading is the same reason alleged for why the general statements concerning Ariba's software are misleading. Plaintiffs allege that Ariba created the impression that it had full rights to market the software, when it knew that it did not because the products infringed ePlus' patents.

The court is not convinced that plaintiffs have pled sufficient facts first, to show why the statements are misleading and second, to show that defendants were knowingly or deliberately reckless in making the statements. Plaintiffs allege that defendants should have admitted to wilful infringement of ePlus' patents, even before a judgment in the litigation was ever reached. In an adversarial system of adjudication, however, there is no obligation to admit to such wrongdoing. A defendant need not forgo defense of a patent suit in order to avoid liability in a subsequent

8

securities suit. To hold otherwise would be contrary to basic notions of due process in which each litigant is afforded a fair and meaningful opportunity to present its side of the story. Once the jury reached a verdict of wilful infringement, Ariba dutifully disclosed the information. The jury rendered its verdict on February 7, 2005 and on February 8, 2005, Ariba announced the jury verdict. SAC ¶¶ 41, 42.

Notwithstanding the fact that defendants were not obligated to admit liability, the litigation disclosures may have been misleading if they created a false impression that Ariba would necessarily win the suit when in fact Ariba believed it would not. This court finds two recent decisions from the District of Massachusetts instructive, although they are of course non-binding. In re Seachange Intl., Inc., 2004 WL 240317 (D.Mass. 2004); Rosenbaum v. Boston Comm. Group, Inc., 445 F. Supp. 2d 170 (D.Mass 2006). Like the present action, Seachange and Rosenbaum were securities fraud cases in which the defendant company was involved in prior patent litigation and was found to be wilfully infringing. The court in Seachange held that the defendant's disclosures were not misleading because they were neutral statements that did not suggest the defendant would prevail in the patent litigation or imply that the impact of the litigation on the company would be positive. Seachange, 2004 WL 240317 at 8. The court granted defendant's motion to dismiss the securities fraud action. Id. at 16. In contrast, the court in Rosenbaum held that the defendant's patent litigation disclosures were misleading because they contained defendant's affirmative beliefs about the merits of the litigation. Rosenbaum, 445 F. Supp. at 176. In Rosenbaum, the defendant had made repeated statements that it did not believe it infringed on the patents and that the patents were invalid in light of prior art and other reasons. Id. at 173. Plaintiff there also alleged a number of facts tending to show the defendant had taken specific steps to mask its infringement and to misrepresent its efforts in obtaining authoritative legal opinions regarding noninfringement. The court denied defendant's motion to dismiss the securities fraud action. Id. at 177.

None of the Rosenbaum type of allegations are made here; rather, the patent litigation

disclosures are similar to the disclosures in Seachange. Ariba did not state that it would prevail in the litigation or that it believed its products did not infringe on ePlus' patents. Like the defendant in Seachange, Ariba was careful to state that it could not predict the outcome of the litigation and was also careful to not imply that the impact of the litigation would be positive. Indeed, Ariba specifically disclosed that in the event it lost the patent litigation, it could be enjoined from selling the product to its clients and could be forced to pay substantial royalty damages. Ariba did state that it had "strong defenses" that it intended to "vigorously" pursue, but it was careful to not imply that those defenses would in fact succeed. In sum, Ariba issued a relatively neutral statement accurately describing the nature of the suit and its procedural history, without giving an impression either way that the litigation would necessarily succeed or fail. Indeed, denial of ePlus' motion for partial summary judgment of infringement and denial of Ariba's motion for summary judgment of noninfringement and invalidity do not speak to the likelihood of success of either party at trial.

Plaintiffs make much of the fact that Ariba was aware of the ePlus patents. First, in June 2003, shortly after ePlus had announced the grant of one of the patents at issue in the litigation, Dan Darby, Ariba's manager of Sales Enablement, circulated to all Ariba sales personnel an email acknowledging its grant. SAC ¶ 23. Second, in September 2003, an unnamed Ariba employee distributed a document entitled "Ariba Competitive Notes, ePlus, September 11, 2003." SAC ¶ 27. The document copied portions of an ePlus webpage or brochure which stated that ePlus's electronic sourcing technology was patented. Id. During trial Louis Unkeless, Ariba's Vice President of Marketing, testified that as of September 11, 2003, personnel within Ariba were aware that ePlus had stated on its website and brochure that it had patents covering its supplier enablement technology. Id. Third, during trial ePlus' expert witness testified that Ariba made no effort to avoid infringement as it did not have an internal clearance procedure, did not obtain an opinion letter, and did not redesign its infringing products and methods. SAC ¶ 26. At trial, Ariba's Chief Technical Officer, its key sales officer charged with selling the infringing product, and its in-house counsel testified that they did not review the patents after learning of the suit. SAC ¶ 30.

Although these facts support an inference that defendants were *aware* that ePlus owned a patent and had asserted it against Ariba, they are insufficient to support a strong inference that Ariba *believed* it was infringing ePlus' patents. Gompper v. VISX, Inc., 298 F.3d 893, 896-897 (9th Cir. 2002) (distinguishing between awareness of a competitor's patent claim and belief in its underlying merits). Indeed, these facts support a plausible inference that Ariba believed that it was *not* infringing. If Ariba did not believe its products infringed ePlus' patents, then it had no need to conduct a review process, obtain an opinion letter or redesign its products to avoid infringement. Consideration of this plausible opposing inference cuts against plaintiff's case of a strong inference of scienter. Id. at 897.

Moreover, plaintiffs have failed to plead particular facts connecting awareness of ePlus' patent claim, to knowledge that Ariba's products were infringing, to statements issued by the company and the individual named plaintiffs. Although plaintiffs have pled facts to show certain officers and unnamed "personnel" were aware of the ePlus patents, they do not allege facts to show that this awareness extended to high-level officers with authority and control over the statements issued by Ariba. Plaintiffs have not pled facts to show that Dan Darby's email or the "Competitive Notes" brochure were ever received or reviewed by individual defendants Calderoni and McCormick. Moreover, plaintiffs have not pled facts to show that individual defendants McCormick and Calderoni, or any other officer or employee of Ariba, had specific legal or scientific knowledge about the content of ePlus' patents on which to base a conclusion that Ariba's software was infringing. This is not a case in which defendants recruited from ePlus an inventor with first-hand knowledge of the patents at issue, for the specific purpose of developing products embodied the patent. See, e.g. In re Magma Design Automation, C 05-02394, N.D. Cal., Docket Entry # 55 (plaintiff's opposition to defendant's motion to dismiss), Docket Entry # 75 (order denying motion to dismiss), (Breyer,J.).

In sum, the court concludes that defendants' statements concerning the patent litigation were not misleading and were not made with a knowing or deliberately reckless belief that Ariba's

11

products infringed on ePlus' patents.

        C.      <u>Statements Concerning Financial Results</u>

The last category of statements alleged in the complaint pertain to Ariba's financial results and the revenue it derived from its spend management software. Plaintiff's theory for why the financial statements are false and misleading is that they failed to account for a material loss contingency as required under Generally Accepted Accounting Principles ("GAAP"). Under Statements of Financial Accounting Standards Number 5 ("FAS-5"), a company must disclose the circumstances of a loss contingency when there is a "reasonable possibility that a loss may have been incurred." FAS-5, ¶ 9-10 (Fin. Acct. Stands. Bd., March 1975). In addition, FAS-5 requires accrual of the amount resulting from a loss contingency only if the liability is "probable" and the amount of the loss can be "reasonably estimated." <u>Id.</u> ¶ 8. "Pending or threatened litigation" is a loss contingency. <u>Id.</u> ¶ 4e.

Plaintiffs have not satisfied their burden to describe with particularity, how defendants have violated FAS-5 by failing to disclose pending or threatened litigation. As already discussed above, Ariba disclosed the pending ePlus patent claim in the first quarterly report that Ariba submitted to the SEC after the ePlus action was filed. Ariba also disclosed the jury verdict immediately after it was reached. Ariba thus complied with FAS-5 in disclosing a loss contingency involving pending litigation. Plaintiffs also allege that Ariba failed to disclose threatened litigation. However, they have not pled particular facts showing that Ariba was aware, before the ePlus action was filed, that there was a "reasonable possibility" that Ariba was infringing on ePlus' patents. As discussed above plaintiffs have pled facts to show that Ariba was aware of the existence of ePlus' patents, but plaintiffs have not pled particular facts to show that Ariba believed its products were potentially or actually infringing. Nor have plaintiffs pled facts to show that prior to the filing of their patent claim that ePlus issued formal cease and desist letters or otherwise threatened Ariba with future litigation.

12

1   Plaintiffs allege a separate violation of FAS-5 in that Ariba failed to accrue, even after the
2   ePlus claim was filed, the amount of the loss contingency, i.e. the cost of the reasonable royalty
3   owed to ePlus.  Other than this conclusory allegation, however, plaintiffs have not pled facts to
4   describe with particularity the amount that should have been accrued or facts to show that such an
5   amount could have been reasonably estimated.  The court notes, however, that defendants' Form
6   10-K, referenced and quoted in the complaint, stated ePlus' estimate of a reasonable royalty to be
7   between 76 and 98 million dollars.  Plaintiffs also argue in their opposition brief that defendants
8   had internal sales reports on which to estimate how many units of the software had been sold.  The
9   court will assume this fact was pled in plaintiffs' complaint.  The court nevertheless concludes that
10  plaintiffs have not provided sufficient facts for a "court to discern whether the alleged GAAP
11  violations were minor or technical in nature, or whether they constitute widespread and significant
12  inflation of revenue."  In re Daou Systems, Inc., 411 F.3d 1006, 1020 (9th Cir. 2005). Assuming,
13  arguendo, that defendants did violate GAAP by failing to accrue the amount of a reasonable
14  royalty after the contingent loss was probable and its amount was reasonably estimated, plaintiffs
15  have not alleged whether this technical violation would have been material in light of defendants'
16  overall financial situation.

            D.      Stock Sales and FreeMarkets Merger
19          As a final basis for dismissal, the court notes that plaintiffs have alleged motive and
20  opportunity to make misrepresentations in order to inflate Ariba's stock price to benefit insiders
21  who sold Ariba stock during the class period and to acquire FreeMarkets at a discounted price.
22  Under the Ninth Circuit's rigorous pleading requirements for scienter, motive and opportunity
23  alone are insufficient to support a strong inference of fraud that is intentional or deliberately
24  reckless.  Silicon Graphics, 183 F.3d at 974.  As already discussed, the court has found plaintiffs'
25  147-paragraph complaint to be deficient in statements that are actionable as misleading or false.
26  The court has also found insufficient facts to support the allegation that defendants knew its

products infringed ePlus' patents and was nevertheless deliberately reckless in creating the impression that it did not infringe. Accordingly, even if motive and opportunity did exist for defendants to inflate the price of Ariba stock, the addition of these allegations can do little to salvage plaintiffs' complaint. In re Vantive Corporation Securities Litigation, 283 F.3d 1079, 1093 (9th Cir. 2002) ("[s]tock sales are helpful only in demonstrating that certain statements were misleading and made with knowledge or deliberate recklessness when those sales are able to be related to the challenged statements"). For the sake of completeness, the court will address why the insider stock sales and the FreeMarkets merger, by themselves and in conjunction with the complaint as a whole, are insufficient to avoid dismissal.

Plaintiffs allege that four Ariba insiders sold stock during the class period. SAC ¶¶ 24, 128. Three of the four insiders are not named defendants and plaintiffs have not alleged that they participated in the issuance of or had any control over the allegedly misleading statements made by Ariba in its press releases and SEC filings. The one named defendant who made stock sales during the class period was David McCormick who was President of Ariba and a Board Member. SAC ¶ 14. He sold 120,000 shares of Ariba stock, or 39% of his total holdings, for proceeds of $878,571. SAC ¶ 35. Plaintiffs allege that the timing of McCormick's trades was suspicious because they occurred between November 4 and 12, immediately before the judge denied all motions for summary judgment in the ePlus patent litigation. Id. The court, however, takes judicial notice of the fact that McCormick was previously CEO of FreeMarkets. Declaration of Gowharrizi, Exh. A at 78 (Ariba's Form 424(B)(3) filed with the SEC on May 18, 2004, discussing the Ariba-FreeMarkets merger). McCormick did not become an insider of Ariba until the Ariba-FreeMarkets merger was complete on July 1, 2004, after the patent litigation was filed. It is therefore difficult to evaluate whether McCormick's November stock sale was unusual given that he did not have an established history of stock sales as an Ariba insider. Moreover, plaintiffs have not alleged that any other high-level insider such as defendant Calderoni made stock sales while the litigation was pending or at any other time during the class period.

14

1 | Finally, plaintiffs attempt to draw an inference of motive and scienter from Ariba's acquisition of FreeMarkets. The court agrees with defendants that the inference is illogical. The stock-for-stock portion of the merger consideration was a fixed exchange ratio determined in January 2004, months before the ePlus litigation was filed in May 2004. SAC ¶ 75. Because of the fixed exchange ratio, Ariba would have to give each FreeMarkets shareholder 2.25 shares of Ariba stock, regardless of whether Ariba's stock increased or decreased. Therefore, the FreeMarkets acquisition could not have provided a motive for Ariba to conceal the alleged patent infringement or mislead investors that Ariba would be successful in the suit.

## II.  Section 20(a) Claim

Under section 20(a), joint and several liability may be imposed on persons who directly or indirectly control a violator of the securities laws. 15 U.S.C. § 78t. Violation of section 20(a) is predicated on a primary violation of the Securities Exchange Act of 1934. Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 978 (9th Cir. 2000). As plaintiffs have failed to adequately plead a primary violation of section 10(b), they have also failed to adequately plead control person liability under section 20(a).

## III.  Leave to Amend

Leave to amend should be freely granted unless amendment would be futile. Klamath-Lake Pharamceutical Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (futile amendments should not be permitted); Silicon Graphics, 183 F.3d at 991 (denying leave to amend because defects in the pleadings could not be cured by amendment). Plaintiffs have amended their complaint twice and have therefore had three opportunities to satisfy the rigorous pleading requirements under the PSLRA  At the hearing, the court asked plaintiffs if there are any additional facts the court should consider and the plaintiffs did not provide any.  The court concludes that amendment would be futile and denies leave to amend.

CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED without leave to amend.

IT IS SO ORDERED.

Dated: November 15, 2007

                                              MARILYN HALL PATEL
                                              United States District Court Judge
                                              Northern District of California